UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 7:23-CR-350 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | MCALLEN, TEXAS |
| | . | THURSDAY, AUGUST 31, 2023 |
| PEDRO CRUZ ALMEIDA, JUNIOR, | . | 02:10 P.M. TO 02:22 P.M. |
| | . | 02:23 P.M. TO 02:32 P.M. |
| DEFENDANT. | . | |
| . . . . . . . . . . . . . . . . . | | |

SENTENCING - UNSEALED PORTION ONLY

BEFORE THE HONORABLE MICAELA ALVAREZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:                  SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: STEPHANIE GARCIA

CASE MANAGER:                 NOT IDENTIFIED

OFFICIAL INTERPETER:          JUDY JENNER
                              CHRISTINA HELMERICHS

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
battshott@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

MCALLEN DIVISION


UNITED STATES OF AMERICA,   .   CASE NO. 7:23-CR-350
                       .
        PLAINTIFF,   .
                       .
      V.          .   MCALLEN, TEXAS
                       .   THURSDAY, AUGUST 31, 2023
PEDRO CRUZ ALMEIDA, JUNIOR,  .   02:10 P.M. TO 02:22 P.M.
                       .   02:23 P.M. TO 02:32 P.M.
       DEFENDANT.    .
. . . . . . . . . . . . . . . .


SENTENCING - UNSEALED PORTION ONLY

BEFORE THE HONORABLE MICAELA ALVAREZ
UNITED STATES DISTRICT JUDGE

Appearances:

**For the GOVERNMENT:**       **LEE FRY, ESQ.**
                           Assistant United States Attorney
                           Office of the United States
                             Attorney
                           1701 West Business Highway 83
                           McAllen, TX 78501

**DEFENDANT ALMEIDA, JR.:**    **CHRISTINA L. CONWAY-NAVARRO, ESQ.**
                           Assistant Federal Public Defender
                           Office of the Federal Public
                             Defender
                           1701 W. Business Highway 83
                             Suite 450
                           McAllen, TX 78501-5178

Transcription Service:      Cheryl L. Battaglia
                           Trinity Transcription Services
                           1081 Main Street
                           Surgoinsville, TN 37873

1    **McAllen, Texas; Thursday, August 31, 2023; 02:10 p.m.**

2        **THE COURT:** *Case Number 23-CR-350, Pedro Cruz*

3    *Almeida, Junior.*

4        **MR. FRY:**  Good afternoon, your Honor.  Lee Fry on

5    behalf of the United States.  Present and ready to proceed.

6        **MS. CONWAY-NAVARRO:**  Good afternoon, your Honor.

7    Christine Conway-Navarro on behalf of Mr. Almeida, Junior.  He

8    is present and ready.

9        **(Pause in the proceeding.)**

10        **THE COURT:**  Mr. Almeida, please raise your right hand

11    to be sworn in.

12        **(Defendant sworn.)**

13        **THE COURT:**  Mr. Almeida, you are before the Court for

14    sentencing on a charge of smuggling goods from the United

15    States.  Do you understand this?

16        **DEFENDANT ALMEIDA, JUNIOR:**  Yes.

17        **THE COURT:**  Miss Conway, did you receive and review

18    the Presentence Investigation?

19        **MS. CONWAY-NAVARRO:**  I did, your Honor.

20        **THE COURT:**  And did you review it with your client?

21        **MS. CONWAY-NAVARRO:**  I did.

22        **THE COURT:**  Mr. Almeida, did you review with your

23    attorney the Presentence Investigation?

24        **DEFENDANT ALMEIDA, JUNIOR:**  Yes, your Honor.

25        **THE COURT:**  Is there a motion from the Government?

1      **MR, FRY:**  Yes, your Honor.

2          The Government move -- the Government moves for the

3  third point pursuant to acceptance of responsibility.

4          **THE COURT:**  The Court will adopt that recommendation.

5          The Guideline range becomes 46 to 57 months.  Do you

6  understand this, Mr. Almeida?

7          **DEFENDANT ALMEIDA, JUNIOR:**  Yes, your Honor.

8          **THE COURT:**  Miss Conway, is there anything that you

9  wish to say on your client's behalf?

10         **MS. CONWAY-NAVARRO:**  Yes, your Honor.  Thank you.

11         Your Honor, Mr. Almeida stands before you at the very

12  young age of 22 years of age.  When he first got involved in

13  this, he was about maybe 20, 21.  He is quite young.

14         And when you look at his criminal history, well, to

15  be quite frank, he doesn't have any, your Honor.  In my months

16  in representing him he's always expressed a remorse for finding

17  himself here, remorse to his family, to the Government.

18         And he has been on pre-trial release, pending --

19  leading up to today.  He's been compliant while on release.  He

20  has aspirations like many young men do to go to college.

21         To his credit while he has been awaiting sentencing,

22  he has used this time to grow a business.  He started a mens

23  clothing business here in the Medicabo (phonetic) on 23rd

24  Street.  He's been paying rent there monthly, approximately --

25  well, I figure that slips my mind at this -- at this time.

1          Importantly, your Honor, he has expressed wanting to

2    change -- change his life.  And he recognizes that this offense

3    will have grave effect for his future.

4          We did submit to the Court a couple of letters of

5    support.  And I think that in looking at these letters, I know

6    from the -- they're from the same gentlemen.  One speaks to

7    his -- his personality or his characteristics as a -- as an

8    employee.  And the others speak to his character at least

9    personally.

10          Your Honor, I want to make it very clear.  We don't

11    minimize the gravity of this offense.  But we are asking the

12    Court to look at is how young he was when he got involved.  I

13    don't think he was -- or even maybe now is well versed in

14    the -- the ways of the world.

15          I think that he was probably an easy target, given

16    his youth.  And very importantly, your Honor, he did avail

17    himself to the Government.  He made a post-Miranda statement.

18          And more and more, your Honor, you know, we -- we

19    tend to encourage our clients to be truthful, honest,

20    forthcoming.  And unfortunately, it seems as though in his

21    situation it appears to be to his detriment because his honesty

22    from the statements that he's made now are -- are found in --

23    to be used against him unfortunately.

24          I do want to applaud his efforts of being honest and

25    being forthcoming.  So we ask the Court to take that into

1    consideration.

2         Your Honor, we do want to highlight a couple of

3    things that we are asking the Court for consideration as to a

4    downward departure.  First and foremost, we are asking --

5    asking, as we typically do in these kinds of cases, for a role

6    adjustment.  Only because, your Honor, as the PSR indicates,

7    there were other unindicted co-conspirators that were directing

8    him on the Mexican side.

9         And while we do not minimize what his role was, we're

10   just asking the Court to see that there are others who are

11   calling the shots, so, you know, no pun intended, calling the

12   shots here, giving him direction, telling him where to go.

13   Have him do this, instructing him.  And I believe the word that

14   was used in the PSR was recruiting him.

15        So we would ask the Court for a ruling as to that

16   matter.  And additionally, and very importantly, your Honor, we

17   did struggle a little bit in -- in leading up to today, given

18   the -- the change of the law that's coming up in November.

19        Mr. Almeida is somebody who would benefit of being a

20   zero point offender.  He has no criminal history.  And so, we

21   do ask the Court to take that into consideration that he would

22   otherwise be eligible for that reduction because he is --

23   doesn't have any -- qualify for that new language in 4(c)(1.1).

24        For all of those reasons -- oh, also importantly,

25   your Honor, the courtroom is filled with his support today.

1  He's got his parents here, his sisters here, all of them are

2  here in support of him.  And we -- for all those reasons, we

3  asked the Court to consider a downward departure and the least

4  amount of time possible.

5          **THE COURT:**  Thank you.

6          **MS. CONWAY-NAVARRO:**  Thank you.

7          **THE COURT:**  I'll address the role adjustment now.

8  And then I'll hear from Mr. Almeida and the Government.

9          And the Court does not believe a role adjustment is

10  warranted.  I agree with how you assess others here, where that

11  may give them a leadership role, an enhanced role.  That

12  doesn't necessarily mean that Mr. Almeida warrants a mitigating

13  role adjustment.

14          So the Court sees Mr. Almeida as being an average

15  participant now.  So that request is denied.

16          Mr. Almeida, is there anything that you wish to say?

17      **(Pause in the proceeding.)**

18      **DEFENDANT ALMEIDA, JUNIOR:**  I want to apologize to

19  everyone in here, as to you and the Government.  I want to --

20  everyone that's here.  I'm sorry.

21          **THE COURT:**  That's okay.  Take your time.

22      **(Pause in the proceeding.)**

23      **DEFENDANT ALMEIDA, JUNIOR:**  I want to talk to

24  everyone that's in here for being here today.

25      **(Pause in the proceeding.)**

1    **DEFENDANT ALMEIDA, JUNIOR:**  I know what -- I know

2    what I did 3was wrong.

3       **(Pause in the proceeding.)**

4       **DEFENDANT ALMEIDA, JUNIOR:**  And --

5       **(Pause in the proceeding.)**

6       **DEFENDANT ALMEIDA, JUNIOR:**  I'm sorry.

7       **THE COURT:**  All right.  No need.  Take your time.

8       **(Pause in the proceeding.)**

9       **DEFENDANT ALMEIDA, JUNIOR:**  I feel like I could have

10   done more.  I could have done better.

11      **(Pause in the proceeding.)**

12      **DEFENDANT ALMEIDA, JUNIOR:**  I could have not been

13   there.

14      **(Pause in the proceeding.)**

15      **DEFENDANT ALMEIDA, JUNIOR:**  And, I just -- just made

16   a poor decision.

17      **(Pause in the proceeding.)**

18      **DEFENDANT ALMEIDA, JUNIOR:**  And --

19      **(Pause in the proceeding.)**

20      **DEFENDANT ALMEIDA, JUNIOR:**  -- I know whatever

21   happens, it's -- it's a good decision.  It's -- it's going to

22   be good for me whatever happens.

23      **(Pause in the proceeding.)**

24      **DEFENDANT ALMEIDA, JUNIOR:**  That would be -- that

25   will be it.

1      **THE COURT:**  All right.  Thank you.

2              Anything from the Government?

3        **MR, FRY:**  Yes, your Honor.

4              The Government wants to emphasize that this is -- the

5      Court's already ruled on the role adjustment.  But the

6      Government believes that the seriousness of this offense needs

7      to be addressed from our angle, and that is, this isn't a -- a

8      one-time smuggling attempt.  This isn't a one-time purchase of

9      ammunition that a -- a young person might need a -- a lapse in

10     judgment.

11             This occurred over a year.  He ordered -- he did this

12     over 30 times.  That's 2½ times a month on average.  That --

13     that is quite a bit of ammunition when, even if we look at the

14     smaller of the two events that they involved that we were able

15     to apprehend, we're still talking about 300 rounds of .50

16     caliber ammunition.  This is some of the most serious, the most

17     dangerous ammunition that exists.

18             Additionally, your Honor, we're talking about an

19     individual who was taking a -- a monetary benefit from this,

20     but also someone who was doing this while attending the police

21     academy.  And this is just not something the Government is

22     willing to kind of set aside.

23             This is someone who we were hoping, you know, could

24     be trusted within the community when someone is in need of

25     help.  And instead, while attending that program, is engaging

1   in very serious criminal conduct, something that was putting

2   very dangerous things in the hands of -- of those in Mexico and

3   here in the United States.

4          And the Government's not saying that he's the one who

5   exported the ammunition.  We know, based on the investigation

6   that's not what happened here.  But he was the one who

7   purchased the ammunition.  He gave it to another with the

8   anticipation that it was going to go out.

9          But even so, can -- the Government has concern with

10  him purchasing the ammunition to give another individual, even

11  if it didn't leave the United States, that it could have stayed

12  in the United States and still been put in the hands of very

13  dangerous criminals.

14         Additionally, your Honor, as noted in Paragraphs 9

15  and 10 of the Presentence Investigation Report, he would also

16  travel to Mexico to require the money.  This, again, is -- is

17  not a -- I'm going to send you a Venmo payment.  Here's $200.

18  Go buy some ammunition.

19         He's doing an active role.  He was very involved in

20  this.  And it occurred over a very lengthy period of time.

21         Additionally, your Honor, the Government does have

22  some concern, essentially, with the -- the disregard of the

23  laws that this individual was doing while, again, being in a

24  position to attempt to uphold those laws and be what we would

25  see, you know, the upstanding police officer.

1      So, your Honor, the Government believes that a

2  sentence at the high end of the current Guideline range is

3  appropriate.  We know that 57 months is a long time, especially

4  for someone this young.  But we think that the characteristics

5  of this offense, even with no criminal history, make it an

6  aggravating offense.

7      We understand that it's not any enhancements.  It --

8  it's -- but we do not believe that the low end appropriate.

9  We're asking for 57 months, your Honor.

10      **THE COURT:**  And -- and I have a question.  As I was

11  reading through the report, it indicates that he was, I guess,

12  stopped and questioned on the -- on the 3rd of February.  At

13  that point in time, apparently he was released.  And it said

14  that the investigation continued.  And then on the 9th, you

15  know, they seize these others and he arrested.

16      So -- so was the, basically, you know, on the 3rd

17  that ammunition and -- and then on the 9th it's a new purchase

18  between the 3rd and the 9th?  Or these are ammunitions that you

19  think he had already acquired and they just don't get seized

20  until the 9th.

21      **MR, FRY:**  Your Honor, may we approach?

22      **THE COURT:**  You may.

23      **(Counsel approaches the Court.)**

24      **(Begin Sealed Sidebar Conference 2:22:34).**

25      **(End Sealed Sidebar Conference 2:23:57)**

1        **THE COURT:**  All right.  Thank you for that

2   clarification.

3            Then, Mr. Almeida, the Court does consider all that

4   has been presented here.  And -- and I have a question if

5   you're willing to answer it.  If you're not, it doesn't harm

6   your case.

7            But -- but you apologized to me.  And -- and I would

8   like to ask why you apologized to me.

9        **(Pause in the proceeding.)**

10       **DEFENDANT ALMEIDA, JUNIOR:**  Well, if it weren't for

11   me, you wouldn't be here --

12       **THE COURT:**  Okay.

13       **DEFENDANT ALMEIDA, JUNIOR:**  -- spending time with me.

14       **THE COURT:**  Okay.  Well, that's true I wouldn't be

15   with you, but I'd be with somebody else.

16           But -- but the reason I asked is this, Mr. Almeida,

17   I -- and have -- that's something that comes up a lot.  People

18   will apologize to -- to -- to the Court and sometimes they'll

19   say like I apologize to the Court.  Sometimes they'll say they

20   apologize to me personally.  I'm going to be here -- well,

21   maybe -- maybe I won't actually be here for a while because I'm

22   at a different stage in -- in life.

23           But -- but, basically, a judge is going to be here

24   taking care of this no matter what.  But I ask it because I

25   always feel like -- believe that apologies should go to those

1    people that are harmed by the criminal conduct.  You know, I --

2    to the extent that I'm a member of this community, yes, I can

3    be harmed by the criminal conduct.

4         But this is -- this is my job.  And this is what I

5    do.  And so I'm going to be doing it no matter what.  May not

6    be with you, maybe with others, may not be always criminal

7    cases.  It may be civil cases.  But it's -- it's, you know, my

8    profession.

9         But think about the people that are harmed by the

10   criminal conduct.  You apparently got away with this for quite

11   some time before you were apprehended here.  And all of that

12   ammunition was going into Mexico.

13        You know, because you live here, of some of the

14   violence that goes on in Mexico with the cartels.  And -- and

15   maybe not everyone of these rounds wound with up the cartels.

16   But when we're looking at this volume of ammunition and this

17   type of ammunition, it's very likely that that's where it wound

18   up.

19        And people are threatened.  People are injured.  And

20   people are killed by the cartels.  Sometimes there are others

21   involved in the drug trafficking.  But often they are not.  And

22   all of those people are the ones that end up suffering because

23   of what happened here.

24        And -- and then, Mr. Almeida, I think that sometimes,

25   you know, sort of the forgotten -- the, I guess, they should be

1  recipients of the apologies, not so much the Court itself.

2      And your family, certainly they're going to -- to

3  suffer some because of your, you know, crime and especially if

4  you end up in prison for any period of time.

5      But again, that's, I think, a different suffering

6  than those people who end up, you know, suffering because of

7  this ammunition being successfully taken into Mexico.

8      I know that you're not the only one.  I know that

9  this is going to go on after you no matter what.  But I feel

10  strongly, Mr. Almeida, that it's something that has to be taken

11  into account.  Because I do firmly believe that people often

12  don't really stop to think about their -- their wrongfulness of

13  their conduct until they personally are facing the

14  consequences.

15      And in your case, I think it's especially true

16  because, apparently, this went on for, you know, about a year

17  and on many occasions here.

18      And -- and I, like the Government, am very troubled

19  by the fact that you were attending the police academy while

20  you are doing this.  And -- and, you know, we -- we have sadly

21  a problem with corruption in our law enforcement communities

22  because of what opportunities they have along the border.

23      It's not widespread.  I think that in most part, most

24  of our law enforcement members are good, ethical, law-abiding

25  people.  But even just one or two taint the whole system.  And

1  if -- if it gets more widespread, then we become no different

2  than Mexico.  Because that is a big problem in Mexico.

3          So it troubles me particularly that you're, you know,

4  in training to be a law enforcement officer and at the very

5  same time disregarding the very laws that -- that you should

6  be, you know, upholding.

7          The Court does consider all that.  I also recognize

8  what Miss Conway touched on, that come November there are going

9  to be some changes to the Guidelines that would impact your

10 case if you were being sentenced after November.

11         I've mentioned this before, and I'll mention it

12 again.  I'm not a fan of the new amendments.  I will deal with

13 them once they come about.  My -- I know I have discretion to

14 sentence you to something less than what the Guidelines

15 provide.  So it's not that I don't think I can do so.  I am

16 always cognizant of the fact that if I think a Guideline range

17 is too high, and provided that there is no mandatory minimum,

18 that I can sentence to anything that I think is appropriate.

19         But in your case, I'm more inclined to -- to adopt

20 the Government's view here, you know, that a Guideline sentence

21 is appropriate.  I'm not convinced that it's necessary to

22 sentence you at the high end of the Guideline range.  But I do

23 believe that something other than just the low end of the

24 Guideline range is necessary for, basically, some of the

25 reasons that I've touched on already, that this was not a

1  one -- one time offense, but it happened on, by your own

2  admission, some 30-some occasions, or at least 30.

3  　　　　And that, as I said, you know, you were at the time

4  studying to be a law enforcement officer.  I think that plays

5  some part here as well.

6  　　　　The Court is going to sentence you, Mr. Almeida, to a

7  term of 50 months in custody.  I am also imposing a three year

8  term of supervised release.  While you're under supervision,

9  you're not to commit another federal, state, or local crime.

10  　　　　You are to comply with the standard conditions

11  adopted by the Court.  Additionally, you're not to possess a

12  firearm, ammunition, destructive device, or any other dangerous

13  weapon.

14  　　　　You are to cooperate in the collection of a DNA

15  sample.  The Court finds you do not have the ability to pay a

16  fine and will waive the fine.

17  　　　　And is there still a forfeiture issue in this case?

18  　　　　**MR, FRY:**  I believe there is, your Honor.  I'm moving

19  for that.  But I believe the preliminary order may have already

20  been filed.  If not, the Government can provide it.

21  　　　　**THE COURT:**  Miss Conway looks puzzled.

22  　　　　**MS. CONWAY-NAVARRO:**  I --

23  　　　　**(Counsel confers off the record.)**

24  　　　　**THE COURT:**  Is?

25  　　　　**MR, FRY:**  Your Honor, I will address it with Miss

1    Conway if we need additional paperwork filed.  I'll file the

2    appropriate paperwork with the Court --

3              **THE COURT:**  Okay.

4         **MR, FRY:**  -- if that would be --

5              **THE COURT:**  Okay.

6         **MR, FRY:**  -- appropriate.

7              **THE COURT:**  Okay.  Do it -- do it that way.

8              Okay.  And, Mr. Almeida, you do have the right to

9    appeal.  If you wish to appeal, you need to advise your

10   attorney.  That appeal needs to be filed within 14 days.

11             If you cannot afford an appeal, you may file for *in*

12   *forma pauperus*, in which case, the Clerk will file your notice

13   of appeal and the Court will appoint appellate counsel.

14             And then Mr. Almeida has been out on bond.  Does --

15             **MS. CONWAY-NAVARRO:**  Yes, your Honor.  We would ask

16   the Court to consider to allow him to self-surrender.

17             **THE COURT:**  All right.  I will be waiting to hear

18   from the Government.

19             I will tell you that I have some concerns, in light

20   of the fact that he was going to Mexico regularly in connection

21   with this, but I'll hear from the Government and see what your

22   position is.

23             **MR, FRY:**  Yes, your Honor.  The Government -- we have

24   no opposition, necessarily, to him remaining out on bond.  But

25   we would ask that it be a very, very brief period of time.

1      **THE COURT:** Okay.

2      **MR, FRY:** Whether it be one week --

3      **THE COURT:** Okay.

4      **MR, FRY:** -- or a few days --

5      **THE COURT:** Okay.

6      **MR, FRY:** -- but we understand that those

7   distinctions are -- are minor. We -- we defer to the Court.

8           But we do believe that if he's released out on bond,

9   it be for a very, very short period of time.

10      **THE COURT:** And Miss Conway, is there a specific

11   reason why you think he needs some time before he surrenders?

12      **MS. CONWAY-NAVARRO:** Your Honor, simply just to tie

13   his affairs in order.

14      **THE COURT:** Uh-huh.

15      **MS. CONWAY-NAVARRO:** I do, you know, to his credit,

16   he's been compliant, hasn't had any trouble while out on

17   release this entire time. And has -- remains in good contact

18   with his pretrial officers. So we would just ask the Court to

19   afford him some time to be out.

20      **THE COURT:** Okay. I understand the request. You

21   know, I think this is a situation that's a little different

22   from some where the Court has granted the request where they

23   have, you know, children that they maybe -- or taking care of

24   parents. I don't see anything here that Mr. Almeida couldn't

25   have done before today.

1      So the Court is denying that request and ordering

2 that he be taken into custody as of today.

3      **MS. CONWAY-NAVARRO:**  Yes, your Honor.  Thank you.

4      **THE COURT:**  Okay.  The Court also overlooked

5 assessing the $100 Special Assessment, which you are ordered to

6 pay, Mr. Almeida.

7      **MS. CONWAY-NAVARRO:**  Then your Honor, may I speak

8 with him?

9      **THE COURT:**  You may.

10      **MS. CONWAY-NAVARRO:**  Thank you.

11      **THE COURT:**  Thank you.

12      **(This proceeding was adjourned at 02:32 p.m.)**

13

14

15                          CERTIFICATION

16

17 I certify that the foregoing is a correct transcript from the

18 electronic sound recording of the proceedings in the above-

19 entitled matter.

20

21    _/s/Cheryl L. Battaglia_              ____November 14, 2023____

22         Transcriber                              Date

23 7:23-CR-350

24 08/31/23 - 11/14/23